1
2
3
4    **UNITED STATES DISTRICT COURT**
5    **DISTRICT OF NEVADA**
6
7    BARRY C. ROWE,                          )
                                             )        3:04-cv-00444-PMP-VPC
8              Petitioner,                   )
                                             )        **ORDER**
9    vs.                                     )
                                             )
10   STATE OF NEVADA, *et al.*,              )
                                             )
11             Respondents.                  )
     _____/
12
13          This is an action of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, brought

14   by petitioner Barry C. Rowe, a Nevada prisoner.  This action was dismissed without prejudice, and the

15   case closed administratively, pursuant to an Order entered October 26, 2007 (ECF No. 71).  The matter

16   was reopened on July 13, 2010, pursuant to a motion to reopen (ECF No. 93).  Respondents have filed

17   their Answer to the Second Amended Petition and the matter is fully briefed.

18   **I.       Procedural History**

19          On August 2, 1995, petitioner was charged with open murder with the use of a deadly weapon.

20   Exhibit 6.[1]  Following a jury trial that commenced on September 9, 1996, petitioner was found guilty

21   of second-degree murder with the use of a deadly weapon.  Exhibit 48.  A judgment of conviction was

22   entered after petitioner was sentenced to two consecutive terms of life with the possibility of parole.

23   Exhibit 53.  Petitioner filed an appeal (Exhibit 55), which was dismissed by the Nevada Supreme Court

24   on July 15, 1999 (Exhibits 76 and 79).

25   _____

26          [1] The exhibits referenced in this Order were submitted by respondents in support of their motion
     to dismiss and their answer.  The exhibits are found on the Court's docket at ECF Nos. 32-34 and 98-99.

Petitioner commenced his post-conviction review by filing his initial state petition on August 9, 2000.  Exhibit 78.  A supplemental petition was then filed on March 30, 2001.  Exhibit 85.  Thereafter, the state district court dismissed various grounds from the petition and scheduled an evidentiary hearing to develop the facts related to the surviving grounds.  Exhibit 98.  The hearing was conducted on July 19, 2002 (Exhibit 104), and the balance of the petition was denied by an order entered March 10, 2003 (Exhibit 105). Petitioner appealed. Exhibit 107.  The Nevada Supreme Court affirmed the lower court's decision in July, 2004.  Exhibits 119 and 121.

Petitioner's original petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on December 8, 2004 (ECF No. 8).  Following litigation of the claims' exhaustion and cognizability, petitioner filed an amended petition on May 25, 2006 (ECF No. 48).  Respondents answered the claims in the petition arguing grounds 7, 9, 10, and 12 were unexhausted and 9 and 12 were not cognizable (ECF No. 57).  The Court found parts of grounds 7, 9, 10 and 12 to be unexhausted, dismissing those parts without prejudice.  The Court further entered a stay of the proceedings to permit petitioner to return to state court to exhaust ground 9 of the First Amended Petition (ECF No. 71).

Following his return to state court, petitioner moved to reopen this action (ECF No. 89) and filed a Second Amended Petition (ECF No. 90).  Respondents have filed their answer addressing the merits of all grounds and also arguing that ground 9 should be dismissed as procedurally barred and untimely (ECF No. 97).  Petitioner responded to the procedural default arguments (ECF No. 100) and respondents replied (ECF No. 101). The matter is fully briefed.

**II.     Discussion**

     A.      Legal Standard under 28 U.S.C. § 2254

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1
2

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

4   order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

5   the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002).  A state court decision is

6   contrary to clearly established Supreme Court precedent, within the meaning of § 2254, "if the state

7   court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if

8   the state court confronts a set of facts that are materially indistinguishable from a decision of [the

9   Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

10  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000);

11  *Bell v. Cone*, 535 U.S. at 694.

12    Furthermore, a state court decision is an unreasonable application of clearly established Supreme

13  Court precedent "if the state court identifies the correct governing legal principle from [the Supreme

14  Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*,

15  538 U.S. at 73.  The "unreasonable application" clause requires the state court decision to be more than

16  merely incorrect or erroneous; the state court's application of clearly established federal law must be

17  objectively unreasonable.  *Id*.  The state court's factual determinations are presumed to be correct, and

18  the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28

19  U.S.C. § 2254(e)(1).

20    With this standard in mind, the Court considers the Second Amended Petition.

21    <u>Grounds 1, 8 and 14</u>

22    In grounds 1, 8 and 14 the petitioner claims he was denied his right to due process and  a fair

23  trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, where the district court erroneously

24  admitted evidence of uncharged prior bad acts.  Petitioner claims the evidence was not relevant, was

25  more prejudicial than persuasive, and was brought merely to defame him and to confuse and prejudice

26  the jury.  He further argues in grounds 8 and 14 that the court should have applied a new rule developed

in *Walker v. State,* 116 Nev.442, 997 P.2d 803 (2000) which, according to petitioner, requires that, before it is properly admissible, prior bad acts evidence must share the same *mens rea* as required for the charged act.[2]

The uncharged acts which came into evidence arrived through the testimony of petitioner's former classmate who testified, following a proffer hearing, about an incident wherein petitioner "accidentally" stabbed the classmate in the leg while the two were playing around after school. *See* Exhibit 43, pp. 403-418.

In section 2254 actions, federal courts are not charged with determining the proper admissibility of evidence in state courts. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  Federal courts may only concern themselves with whether the evidence of prior bad acts, as admitted in the state courts, was so prejudicial that it violated the defendant's fundamental rights to due process and a fair trial. *See Larson v. Palmateer,* 515 F.3d 1057, 1066 (9th Cir. 2008).

The Court's consideration of these grounds for relief focuses solely on the question of whether the evidence that was admitted was so prejudicial that it violated due process.  As noted by the respondents, "failure to comply with the state's rules of evidence is neither a necessary nor sufficient basis for granting habeas relief." *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir. 1991).  Thus, this Court may consider only whether the Nevada Supreme Court's consideration of the claim was an objectively unreasonable or incorrect application of clearly established federal law.  28 U.S.C. § 2254(d).

When considering the admissibility of bad acts evidence in a federal criminal prosecution, the United States Supreme Court observed that protection from unfair prejudice inherent in prior bad action evidence comes from the requirement of the Federal Rules of Evidence (Fed. R. Evid.) which mandate

---

[2] In fact, *Walker* requires that the trial court conduct a *Petrocelli* (*v. State,* 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985)) hearing before admission of prior bad acts evidence to determine whether: (1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.,* at 446.  According to *Walker*, the relevance issue is satisfied if the two acts require a similar intent.

4

1  that the evidence be offered for a proper purpose (Fed. R. Evid. 404(b)); that the evidence be relevant

2  (Fed. R. Evid. 402--as enforced through Fed. R. Evid. 104(b)); that the trial court make an assessment

3  to determine whether the probative value of the similar acts evidence is substantially outweighed by its

4  potential for unfair prejudice (Fed. R. Evid.  403), and that the trial court, upon request, instruct the jury

5  that the similar acts evidence is to be considered only for the proper purpose for which it was admitted

6  (Fed.R.Evid. 105).    *Huddleston v. U.S.*  485 U.S. 681, 691-692 (1988) (citing *United States v.*

7  *Ingraham*, 832 F.2d 229, 235 (1st Cir. 1987).

8           While the Federal Rules of Evidence do not apply to Nevada state criminal prosecutions, these

9  very factors are similar, if not identical, to the considerations of the state court in reviewing the

10  petitioner's claim under *Walker*.  In denying the claim on direct appeal, the Nevada Supreme Court held:

11           Based on our review of the record, we conclude that appellant's prior bad act
         was sufficiently similar to the instant case to warrant admission for the

12       purpose of demonstrating absence of mistake and modus operandi.  Although
         appellant used a knife in the prior incident, in both the prior bad act and in

13       the instant case appellant produced a deadly weapon in the context of
         horseplay and committed acts of violence upon another in response to a

14       jovial dare.  Additionally, in both instances, appellant expressed shock over
         his conduct and afterwards attempted to minimize his culpability and

15       responsibility by claiming that his prior stabbing of Michael Sellars and his
         shooting of Jason Hansen were terrible accidents.

16
17           Because appellant's prior bad act appeared to establish a pattern of
         committing acts of violence in the context of horseplay and then claiming

18       that his actions were accidental, we conclude that evidence of appellant's
         stabbing of Sellars was relevant to and probative of absence of mistake and

19       modus operandi.    Accordingly, we conclude that the district court's
         admission of appellant's prior bad act during the State's case-in-chief was

20       not manifestly wrong.  *See Walker v. State,* 112 Nev. 819, 824, 921 P.2 923,
         926 (1996)(discussing the three prerequisites that the State must satisfy in

21       order to introduce prior bad act evidence; *see also Petrocelli v. State,* 101
         Nev. 46, 52, 692 P.2d 505, 508 (1985) (*quoting Brown v. State,* 81 Nev. 397,

22       400, 404 P.2d 428, 430 (1965)) (reiterating that the admission of such
         evidence is within the sound discretion of the trial court, whose

23       determination will not be disturbed on appeal unless "manifestly wrong").

24  Exhibit 76, p. 2.

25           Ground 1 is without merit.  Petitioner has not demonstrated to this Court that allowing Sellar's

26  testimony was so prejudicial as to deny a fair trial.  According to the record, the court conducted a

hearing outside the presence of the jury to confirm the nature of the testimony. Exhibit 43, pp. 386-398.

It further offered a limiting instruction to the jury, advising it of the proper application of the testimony it was about to hear. *Id.* at 405-06.   The testimony was not inflammatory, but presented the events as an accident - at least in the opinion of the witness/victim. *Id.* at 406 *et seq.*  The jury could have readily and properly inferred that Sellar's testimony was relevant to show petitioner's recklessness in life threatening situations and to show that he had previously used the "accident" excuse to avoid culpability and liability for his disregard of the safety of others. *See Jammal,* 926 F.2d at 919, 920 (any proper inference drawn by jury from evidence protects due process).   Petitioner has not shown that the Nevada Supreme Court's handling of the claim was improper under 28 U.S.C. § 2254(d).  Moreover, because grounds 8 and 14 present the same claim while specifically arguing the applicability of state law to the admission of evidence, this Court will not entertain the arguments presented therein. Grounds 8 and 14 shall also be denied.

Grounds 2 and 3

In ground 2, petitioner claims the jury instruction on implied malice (Supplemental Instruction) reduced the burden of proof .  In ground 3, petitioner complains of the same result from the jury instruction defining reasonable doubt (Instruction # 8).  He claims his Fifth, Sixth, and Fourteenth Amendment rights to due process were violated by these improper instructions.

As to the Supplemental Instruction on the meaning of implied malice, petitioner complains that when confronted with a question from the jury which indicated confusion, the trial court issued an additional instruction taken from the Nevada case of *Riebel v. State,* 106 Nev 258, 790 P.2d 1004 (1990)*,* as follows:

> Malice is implied from an intentional act involving a high degree of probability that it will result in death, which act [is] done for a base, antisocial purpose and with a wonton disregard of human life, or an intentional act the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.

Exhibit 45, p. 638.

In reviewing claims of improper or incorrect jury instructions in the context of a collateral

proceeding, the court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) quoting, *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The questionable instruction must be viewed in the context of all the instructions and the trial record, *id.*, to determine if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990); *see also Estelle v. McGuire,* 502 U.S. 62, 72-73 (1991).

As to the instruction further defining implied malice challenged in ground 2 as set forth above, the Court notes that the jury was fully instructed on the various elements of the crime of murder and its various degrees as well as the elements of the various lesser-included crimes. *See* Exhibit 46. The supplemental instruction identified by petitioner as reducing the State's burden of proof was found by the Nevada Supreme Court to be in conformance with Nevada law. Exhibit 76. That court said:

> . . .we conclude that the district court's supplemental implied malice instruction accurately indicated that malice could be implied from the circumstances surrounding the killing. The challenged instruction did not reduce the State's burden of proving, or absolve the jury of its duty of finding, each element of the offense beyond a reasonable doubt.
>
> Because the challenged supplemental implied malice instruction was consistent with NRS 200.020 and our prior decisions in this matter, *See McCurdy v. State*, 107 Nev. 275, 278, 809 P.2d 1265, 1266 (1991) (indicating that "implied malice . . .does not relate to a deliberate intentional killing but is rather a means rea inferred in law from the circumstances of the killing"), we conclude that the district court did not err in submitting the supplemental implied malice instruction to the jury.

*Id.*, p. 3. Petitioner has not demonstrated that this decision was improper within the confines of this Court's jurisdiction under 28 U.S.C. § 2254(d).

The reasonable doubt instruction (Instruction # 8) attacked in ground 3 has been found by the Ninth Circuit Court of Appeals to meet constitutional muster. In *Ramirez v. Hatcher,* 136 F.3d 1209 cert denied, 525 U.S. 967 (1998), the court concluded the subject jury instruction on reasonable doubt, including its formulation "doubt as would govern or control a person in the more weighty affairs of life" did not violate due process. Petitioner presents no arguments here that would undermine that finding and he provides nothing which shows the Nevada Supreme Court's denial of this claim was contrary

to or an unreasonable application of clearly established federal law.

Grounds 2 and 3 are without merit and no habeas relief is warranted.

Ground 4

Here, petitioner claims he was denied rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments when the prosecutor offered personal opinion during his closing arguments suggesting a motive for petitioner's actions.   In closing arguments,  the prosecutor is alleged to have said . . . my theory was that Richae was in a dangerous...," whereupon, counsel for the defense objected. Continuing, the prosecutor is alleged to have said, "And he stayed and that is why he got threatened, because the only way Mr. Rowe was going to be able to pursue his affections for Miss Hansen was if Jason wasn't there."   Petitioner contends that these improper arguments in conjunction with the erroneous jury instructions and the sparse evidence denied him a fair trial.

In examining allegations of prosecutorial misconduct, the Court must ask whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  However, "[i]t is not misconduct for the prosecutor to argue reasonable inferences based on the record." *United States v. Atcheson,* 94 F.3d 1237, 1244 (9th Cir.1996) (citation omitted).

In considering this claim on appeal, the Nevada Supreme Court found the challenged comments were "not sufficiently egregious to deprive appellant of a fair trial."   Exhibit 76, p. 3. The court noted:

> Although the prosecutor briefly interjected his personal theory of the case by intimating that appellant killed Jason Hansen so that appellant could romantically  pursue Jason's sister without interference from Jason, the prosecutor ceased such argument after he was admonished by the district court.  Therefore, we conclude that the prosecutor's comments, standing alone, do not constitute reversible error.  *See Greene v. State,* 113 Nev. 157, 169, 931 P.2d 54, 62 (1997) (reiterating that criminal convictions are not to be lightly overturned on the basis of a prosecutor's isolated comments in the absence of other trial error).

*Id.*

Petitioner has not shown that this decision by the state court was erroneous under 28 U.S.C. § 2254.   There is no misapplication of clearly established federal law and the factual findings are

1    reasonable in light of the record.  Ground 4 shall be denied.

2         Ground 5

3         Petitioner alleges that the evidence was insufficient to convict him of second degree murder in

4    violation of his Fifth, Sixth, and Fourteenth Amendment rights to due process.  Petitioner bolsters this

5    claim with the purported impact of other alleged wrongs such as erroneous jury instructions and

6    prosecutorial misconduct.

7         Petitioner offers no specifics as to what evidence was presented or what the evidence showed or

8    even what standard must apply to his claim.  A petitioner must state specific, particularized facts which

9    entitle him to habeas corpus relief for each ground alleged.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.

10   1995), *cert. denied*, 517 U.S. 1143 (1996); *Adams v. Armontrout,* 897 F.2d 332, 334 (8th Cir. 1990).

11   These facts must include sufficient detail to enable the court to determine, from the face of the petition

12   alone, whether the petition merits further habeas corpus review.  *Id.*  In the case of a claim related to the

13   sufficiency of the evidence, petitioner must show that no rational trier of fact could have found the

14   petitioner guilty beyond a reasonable doubt in light of the evidence presented.  *Jackson v. Virginia,* 443

15   U.S. 307, 319 (1979).

16        Because petitioner's claim is conclusory and offers no specifics from which the court can

17   determine the claim's merits, it is not entitled to relief.  Moreover, a review of the record shows that the

18   jury was presented with evidence that petitioner held a loaded and cocked shotgun to the head of Jason

19   Hansen, and when Hansen said, "go ahead, pull the trigger," petitioner did so.  *See generally,* Exhibit

20   41, pp 48-130.  Under Nevada law, murder is the unlawful killing of a human being with malice

21   aforethought. . . (NRS 200.010(1), malice can be implied when there was no considerable provocation

22   for the killing or when the circumstances show an "abandoned and malignant heart" (NRS 200.020).

23   First degree murder requires "poison, lying in wait or torture, or by any other kind of willful, deliberate

24   and premeditated killing."  NRS 200.030(1). Second degree murder includes all types of murder.  NRS

25   200.030(2).  The evidence presented was sufficient to allow a rational jury to find petitioner guilty of

26   second degree murder because rather than acting willfully, deliberately, and with premeditation, he acted

1   with "general malignant recklessness of others' lives and safety" as described in *Thedford v. Sheriff,* 86

2   Nev. 741, 744, 476 P.2d 25, 27 (1970).   The Nevada Supreme Court's determination of the claims was

3   proper under 28 U.S.C. § 2254.   No relief is warranted.

4        Ground 6

5        Petitioner claims a violation of his rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth

6   Amendments because the State failed to turn over discovery on two separate occasions.   He further

7   contends that the withheld evidence was "potentially exculpatory."   Petitioner identifies a single item

8   of evidence that was withheld: documents related to a recorded conversation with Mr. Rowe's roomate

9   [sic] at the trailer park, Joshua Holcomb."   Petition, p. 13.   He does not identify the second alleged

10  instance and he does not demonstrate how the evidence was exculpatory.

11       The United States Supreme Court has held "that the suppression by the prosecution of evidence

12  favorable to an accused upon request violates due process where the evidence is material either to guilt

13  or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373

14  U.S.83, 87 (1963).  Evidence is material "if there is a reasonable probability that, had the evidence been

15  disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*,

16  527 U.S. 263, 282 (1999).

17       Here, there was a reciprocal discovery agreement in place, which petitioner alleges the

18  prosecution breached.   He does not, however, demonstrate or even suggest how the statement of his

19  roommate would have assisted the defense or what the substance of that statement was.[3]  Petitioner has

20  failed to show that the evidence was material or that outcome of the trial would have been different had

21  the defense been aware of its existence prior to trial.   Petitioner's claim is conclusory and without merit.

22  Additionally, the Nevada Supreme Court's assessment of the claim was proper in the circumstances and

23  presents neither an unreasonable or contrary application of clearly established federal law.   Ground 6

24  shall be denied.

25

26       [3] The State court imposed a sanction against the State for withholding the evidence, excluding
     its use at trial.  This suggests the evidence was not exculpatory, but would have actually weighed against
     petitioner.

Grounds 7 and 8

Ground 7 was previously dismissed by petitioner and is not raised in his Second Amended Petition.  Ground 8 has been discussed in conjunction with ground 1, *supra*.

Ground 9

Ground 9 claims "the trial court issued a jury instruction on first degree murder which omitted an essential element of the charged crime" denying him due process.  Specifically, petitioner complains of the use of the *Kazalyn* instruction which was rejected by the Nevada Supreme Court in its decision in *Byford v. State,* 116 Nev. 215, 994 P.2d 700 (2000), because the instruction relieved that State of its burden of proof.  *See Polk v. Sandoval,* 503 F.3d 903, 911 (9th Cir. 2007).  In *Byford,* the Nevada Supreme Court determined that a new instruction was required; one that recognized and addressed the separate meanings of each of the elements of intent for first degree murder. *Id.*

Respondents present two procedural arguments against this claim as well as addressing the claim on its merits.

A.      Procedural Bar

First, respondents argue the claim is procedurally defaulted because it was first presented to the Nevada Supreme Court in petitioner's second state post-conviction petition and it was rejected by that court on the basis of Nevada law independent of its merits.

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To demonstrate cause for a procedural default, the petitioner must be able to "show that some

11

objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

With respect to the prejudice prong of cause and prejudice, the petitioner bears:

> the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension.

*White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982). If the petitioner fails to show cause, the court need not consider whether the petitioner suffered actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988).

## B.   There Was a Procedural Default in State Court.

In this case, there was a procedural default in state court. When confronted with this claim for the first time in March of 2010 (Exhibit 147), the Nevada Supreme Court affirmed dismissal of the petition on the basis of NRS 34.726(1), untimeliness, and NRS 34.810(1) and NRS 34.810(2), abuse of the writ. Exhibit 150. These statutes have been found to be adequate and independent state law grounds to bar federal review of the merits of post-conviction claims for relief. *See, See Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996) (34.726 consistently applied by Nevada courts); *Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999) ("Thus, Nevada follows a strict rule: A petitioner must raise all claims in his first habeas petition in order to avoid the penalty of procedural default."), *cert. denied*, 529 U.S. 1073 (2000).

## C.   Petitioner's Arguments for Excuse of Default

Petitioner raises several arguments in an effort to overcome the procedural bars raised against ground 9. Initially, he argues that his appellate counsel and the court prevented him from exhausting this claim in a timely manner.

Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural

12

default. *Murray*, 477 U.S. at 488.  However, for ineffective assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance of counsel, itself, must first be exhausted in state court.  *Murray*, 477 U.S. at 488-89.  In addition, the independent ineffective assistance of counsel claim cannot serve as cause if that claim is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Petitioner has not raised an independent claim that his appellate counsel was ineffective for failing to present the claim to the Nevada Supreme Court after it was dismissed from his original post-conviction petition.  Thus, this argument is insufficient.

Next, petitioner argues that it would be futile for him to try to exhaust the claim because the Nevada Supreme Court's interpretation of the law is not favorable to his argument.  The Court finds this argument unpersuasive because the State does not allege that the claim is unexhausted.  The State argues that it is procedurally defaulted.   Petitioner's arguments about the merits of the claim and the state court's interpretation of its own laws are not persuasive here and will be reviewed only if he is able to overcome the procedural arguments posed.  Thus far, he has been unsuccessful.

Finally, petitioner claims he is entitled to have his claim reviewed on the merits because his conviction is a "fundamental miscarriage of justice."  He further argues that the miscarriage of justice arose when the jury was improperly instructed and he was convicted of a crime he did not commit.

The "actual innocence" exception, also known as the "fundamental miscarriage of justice" exception, is reserved for extraordinary cases in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495 (1986). In *Schlup v. Dello,* the United States Supreme Court held that prisoners asserting innocence as a gateway to having defaulted claims reviewed on their merits must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S., 298, 327 (1995).

Here, petitioner does not present new evidence.  Instead, he argues that while he did kill Jason Hansen, the killing was accidental and, as an accident, he is not guilty of second degree murder.  He further argues that because the First Degree Murder jury instruction included the *Kazalyn* instruction

1   and, because the Ninth Circuit has held in *Polk v. Sandoval,* 503 F.3d 903,  that the failure to correct this

2   erroneous instruction violated due process, he has shown that trial errors worked to his severe detriment

3   - resulting in a fundamental miscarriage of justice.  These arguments fail.

4          Petitioner has not demonstrated that new evidence exists to support an argument that a fully

5   informed jury would not find him guilty as required under *Schlup*.  Furthermore, under *Polk,* this Court

6   is required to determine if the due process violation arising from the use of the *Kazalyn* instruction had

7   a "substantial and injurious effect or influence in determining the jury's verdict."   *Brecht v.*

8   *Abrahamson,* 507 U.S. 619 (1993).  The evidence suggests that it did not.  Petitioner has not shown that

9   the use of the now rejected *Kazalyn* instruction actually prejudiced him.  In fact, the Court finds that the

10  error was harmless in that petitioner was not convicted of First Degree Murder to which the instruction

11  applied.  He was convicted of Second Degree Murder, which does not require proof of the elements of

12  willfulness, deliberation and premeditation which the *Kazalyn* instruction defined, however

13  inadequately. Petitioner has not overcome the procedural bar to this Court's review of ground 9.

14         Ground 9 shall be denied as procedurally defaulted.   However, the above analysis also

15  demonstrates that the claim is without merit, in that the use of the instruction was harmless error under

16  *Brecht, supra.*

17         <u>Ground 10</u>

18         This ground was previously dismissed by petitioner and is not raised in the Second Amended

19  Petition.

20         <u>Ground 11</u>

21         Ground 11 claims the trial court erred in "ruling that trial counsel was not ineffective" when he

22  allowed the court to excuse a deliberating juror due to illness and replace that juror with an alternate

23  juror without objection.

24         To prove ineffective assistance of counsel, petitioner must prove (1) that his attorney's actions

25  were outside the wide range of professionally competent assistance, and (2) that counsel's actions

26  prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

1      According to the Second Amended Petition, the case was given over to the jury shortly after

2  noon on Friday, September 13, 1996, and deliberations had proceeded for approximately six and one-

3  half hours when the court and counsel met to respond to a question from the jury.  Thereafter, the jury

4  continued its deliberations until 8:30 p.m. when the court recalled the parties because a juror had taken

5  ill and had been released from service by the court.  The juror was replaced with an alternate juror and

6  by 8:45 p.m., the jury returned to start its deliberations anew.  Counsel appeared at the court and were

7  informed of the situation with the ill juror, whereupon "both counsel indicated that they were satisfied

8  with the explanation the court had given." A guilty verdict was reached by 11:05 p.m.

9      Petitioner contends that, based upon the jury's earlier questions, which indicated "extremely

10  'passionate' and 'divergent' views on the meaning of the term 'malice aforethought,' " the jury had

11  come to a stalemate in its deliberations and the replacement of the ill juror with the alternate juror

12  potentially exposed the new juror to undue pressure to agree to the position the original jury may have

13  previously reached.  He further contends that this raises a rebuttable presumption of a denial of his right

14  to a fair trial, citing *Carrillo v. People,* 974 P.2d 478 (Colo. 1999) and various federal circuit court

15  decisions.  Petitioner argues that the court should have released the entire jury for the night and allowed

16  the juror to rest and return the next judicial day (the following Monday) and counsel should have raised

17  an objection to the release of the juror on the record so as to preserve the issue for review.

18      At the evidentiary hearing, counsel testified he thought about making a record or asking that the

19  judge to  recess the jury rather than excusing the juror, but the juror was already gone and the

20  information of what happened came after the "juror was already down the road."  Exhibit 104, pp. 13-

21  14.  Counsel testified that he did not make a record related to the release of the juror because,

22  "[b]asically Judge Agosti said that she questioned the juror and that he felt that he absolutely count not

23  serve as a juror on the jury in the case at all after – afterwards.  That he had these type of episodes before

24  and it took him several days to recover.  And I was unclear about exactly what happened.  But I took

25  it as a – I accepted that the juror could not serve." *Id.* at 15-18.

26      When questioned further by the court: At the time you were called and were advised by Judge

Agosti what had happened, did you consider making a record to say rather than excuse him outright recess the jury until he can be brought back when – he is – ..."  Counsel replied, "Of course I though about that."  Counsel acknowledged he might have been influenced by the lateness of the hour, his assessment of what Judge Agosti had said, or merely fatigue, but he acknowledged that no record was made.  *Id.*  Based on this testimony, the trial court denied relief, concluding nothing would have been different had counsel made a record of his objections, because the record was already clear as to what had occurred.   Exhibit 105.

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight."  466 U.S. at 689.  The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy."  *Id.* (citation omitted).

In deciding the claim, the Nevada Supreme Court, applying *Strickland*, found:

> A reasonably competent defense attorney would not have objected to the juror substitution, especially after the district court consulted a nurse concerning the juror's medical condition when making its decision.  Thus, we agree with the district court's finding that trial counsel's failure to object and make a record of the juror substitution does not demonstrate that counsel's performance fell below the standard of reasonableness.   We therefore conclude that the district court did not err in denying Rowe's post-conviction petition based on ineffective assistance of counsel.

Exhibit 119, p. 3.  This decision is not an unreasonable finding of facts.  The legal standard applied was the one clearly established by the United States Supreme Court in *Strickland v. Washington* and it's application to the facts was reasonable.  Petitioner has not demonstrated that he is entitled to relief on this claim under 28 U.S.C. § 2254.

Ground 12.

Ground 12 was previously dismissed.

16

1      <u>Ground 13</u>

2      In this ground petitioner raised a straight ineffective assistance of counsel claim based upon the

3  same facts and arguments asserted in ground 11, discussed above.  The analysis and the result are the

4  same and need not be repeated here.  Ground 13 will not obtain relief for petitioner.

5      <u>Ground 14</u>

6      Ground 14 was discussed and decided in conjunction with grounds 1 and 8.

7  **IV.    Certificate of Appealability**

8      In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

9  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th

10  Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).   Generally, a

11  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

12  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

13  (2000).   "The petitioner must demonstrate that reasonable jurists would find the district court's

14  assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

15  order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

16  debatable among jurists of reason; that a court could resolve the issues differently; or that the questions

17  are adequate to deserve encouragement to proceed further.  *Id.*

18      Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254

19  and 2255 Cases, district courts are required to rule on the certificate of appealability in the order

20  disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of

21  appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the

22  issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate

23  of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner

24  a certificate of appealability.

25  / / /

26  / / /

1        **IT IS THEREFORE ORDERED** that the Second Amended Petition is **DENIED.**

2        **IT IS FURTHER ORDERED** that no certificate of appealability is warranted and none shall

3  issue.

4        The Clerk shall enter judgement accordingly.

5

6  DATED: February 15, 2010.

7

8                                 _____

9                         PHILIP M. PRO
                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26